Jay MANIFOLD, Judy Roberts, Tom Hanna, Michael D. Lewis, Roy G. Liberman, Marshall E. Cobb, James Carter, John Gieringer, Theresa Worley, Greta S. Buzzard, Peter M. Kerr, Carol Jean Tucker, Thomas Martin Edelman, Franklin M. Nugent, Mike Hurley, Gerald Geier, Michael J. D'Hooge, Mike Roberts a/k/a Warren A. Roberts, III, and The Libertarian Party of Missouri, Appellants,

v.

Roy D. BLUNT, Secretary of State for the State of Missouri, Appellees.

No. 88–2394.

United States Court of Appeals, Eighth Circuit.

March 13, 1989.

*The HONORABLE GERALD W. HEANEY as-

Before LAY, Chief Judge, HEANEY,* Senior Circuit Judge, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL and BEAM, Circuit Judges.

HEANEY, Senior Circuit Judge, with whom LAY, Chief Judge, McMILLIAN and ARNOLD, Circuit Judges, join, dissenting from the Court's decision not to grant appellant's motion to rehear this appeal en banc.

Because the State of Missouri failed to meet its burden of justifying the earlier filing requirement for presidential electors of "new" political parties, I believe this statutory provision violates the Equal Protection Clause of the United States Constitution. I would grant the petition for en banc review for the reasons outlined below.

BACKGROUND

On August 11, 1988, the Libertarian Party of Missouri presented to the Secretary of State a recognition petition containing sufficient signatures to qualify as a "new" political party under Mo.Rev.Stat. §§ 115.-315 and 115.317. The Libertarians presented a final list of presidential electors or declarations of their candidacy on September 7, 1988. The following day, the Secretary of State informed the party that its candidates for president and vice president would not appear on the Missouri ballot because it had failed to file its final list of electors by August 1, 1988. Mo.Rev.Stat. § 115.329 provides that the Secretary of State will not accept any petition for the formation of a "new" party or for the nomination of an independent candidate submitted after the first Monday in August immediately preceding the general election.

sumed senior status on January 1, 1989.

A list of the "new" party's presidential electors must be filed the same day. Mo. Rev.Stat. § 115.399(2) provides, however, that "established" parties need not submit such a list until the third Tuesday before the general election; in this case, the deadline would have been October 18, 1988.

The appropriate standard of review for challenges to ballot access restrictions is one of strict scrutiny. In *Anderson v. Celebrezze*, 460 U.S. 780, 793–94, 103 S.Ct. 1564, 1572–73, 75 L.Ed.2d 547 (1983), the Supreme Court stated:

> [I]t is especially difficult for the State to justify a restriction that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status.  *  *  * A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and—of particular importance—against those voters whose political preferences lie outside the existing political parties. By limiting the opportunites of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity and competition in the marketplace of ideas. Historically political figures outside the two major parties have been fertile sources of new ideas and new programs; many of their challenges to the status quo have in time made their way into the political mainstream. In short, the primary values protected by the First Amendment—"a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," are served when election campaigns are not monopolized by existing political parties. *Id.*, 460 U.S. at 793–94, 103 S.Ct. at 1572–73 (footnotes and citations omitted, emphasis added).

Thus, the state came to a panel of this Court with the very heavy burden of justifying the early filing requirement for presidential electors of "new" political parties. It did not meet this burden.

The rationale advanced by the state for having an earlier filing date for "new" parties was that it is necessary to assure that there are capable and qualified persons to serve as electors for the "new" political party before the party's presidential candidate is placed on the ballot. The state also argues that its interest in efficiency is better served by requiring a "new" party to file its list of presidential electors before the state undertakes the task of verifying petition signatures. I believe that neither rationale meets the strict scrutiny requirements of *Anderson v. Celebrezze.*

On August 1, 1988, the Libertarian Party filed 41,499 petition signatures, more than two times the showing of support required by statute. In view of the substantial showing of support required by the state and the actual support demonstrated by appellants, it is difficult to credit the concern that this "new" political party would not have been able to find a sufficient number of qualified presidential electors.

In addition, even if one were to credit the state's concerns, it did not show that those concerns could have been met by a deadline later than August 1. The state represented that it did not need to begin distribution of absentee ballots until September 27, 1988. Even allowing the state a reasonable time to verify the qualifications of proposed electors for new parties prior to distribution of absentee ballots, it appears that the September 7, 1988, filing of the appellant would have afforded the state sufficient time to protect its interest.

It is undeniable that the earlier filing deadline placed an obstacle in the path of the Libertarian Party which did not exist for either the Republican or Democratic Party. In light of the minimal interests served by this obstacle, the provision should have been found unconstitutional.

Accordingly, I dissent from the Court's decision not to review this case en banc.